IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUADHDHIN BEY-COUSIN,<br><br>*Plaintiff,*<br><br>v.<br><br>OFFICER ERNEST POWELL, et al.,<br><br>*Defendants.* | Case No. 2:19-cv-01906-JDW |

## MEMORANDUM

Vincent Van Gogh summarized an artist's inspiration: "You must start by experiencing what you want to express." But while many artists base their art on experience, they also embellish, change, or distort their experience for purposes of their craft. The question before the Court is whether a party to a lawsuit can use an artist's expressions against him as evidence of the truth. And the Court's answer is, "Not always." In a society that treasures First Amendment expression, courts should start with a presumption that art is art, not a statement of fact. To rebut that presumption, the party offering the evidence must demonstrate that the art is the artist's attempt to tell a factual story. The mere fact that an artistic expression resembles reality is not enough because holding otherwise would risk chilling the free expression that our society holds dear.

Muadhdhin Bey-Cousin is one such artist. As a budding hip/hop rap artist, he released an album called *"Busted by Da Fedz Vol. 1"* while facing gun possession charges. Now, Defendants Ernest Powell and Phillip Cherry want to use Mr. Bey-

Cousin's lyrics against him. But Officers Powell and Cherry have not put before the Court enough facts to rebut the presumption that Mr. Bey-Cousin's lyrics are art. The Court will therefore exclude them from the trial in this case.

## I.     BACKGROUND

Late in the evening on March 28, 2016, two officers in the Philadelphia Police Department heard a call for back-up which included a description of a 160-170 pound, 21-year-old, light-skinned African American man with minimal facial hair who was wearing dark blue pants and a red hooded sweatshirt (or red jacket). In response to that call, those officers, Defendants Ernest Powell and Phillip Cherry, stopped Mr. Bey-Cousin, a 200 pound, 32-year-old, dark-skinned African American man with a long beard who was wearing black sweatpants and a red puffer jacket. That stop led to an arrest and conviction in federal court for being a felon in possession of a firearm. Mr. Bey-Cousin remained incarcerated from March 28, 2016, until December 2018, when the Third Circuit vacated the conviction. Mr. Bey-Cousin alleges that Officers Powell and Cherry planted a firearm on him during the arrest. In his Complaint, he asserts violations of 42 U.S.C. § 1983 for malicious prosecution and malicious use and abuse of process.

Mr. Bey-Cousin had an inchoate music career at the time of his arrest. Following his arrest, he released "*Busted By Da Fedz Vol. 1*," which includes songs titled "*Busted by Da Fedz*," "*Gun Talk*," and "*Court Apparance*" [sic] and an album cover that depicts Mr. Bey-Cousin handcuffed in federal court during the prosecution. Mr. Bey-Cousin has filed a motion to exclude any evidence of his lyrics. Officers

Powell and Cherry assert the songs describe the facts at issue and suggest that the Court permit them to cross-examine Mr. Bey-Cousin about the lyrics. Officers Powell and Cherry also argue that the jury should hear Mr. Bey-Cousin's lyrics to assess Mr. Bey-Cousin's claim for damages based on harm to his career.

## II.     LEGAL STANDARD

The Federal Rules of Evidence contain no express authority for motions *in limine*. Regardless, both case law and practice recognize these motions. *See, e.g., Ohler v. United States*, 529 U.S. 753, 758 (2000). The key function of a motion *in limine* is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984). A ruling on a motion *in limine* is essentially a preliminary ruling which the Court can reconsider during trial. *See id*. at 41.

## III.    ANALYSIS

### A.     Relevance Of The Lyrics To Liability

Under Federal Rule of Evidence 104(a), a court must decide any preliminary question about whether evidence is admissible. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). When the relevance of evidence depends "on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). The Parties have not identified, and the Court has not found, a case that sets forth a rule to determine when artistic expression is relevant. In determining whether an artistic expression is relevant, the Court finds guidance in Federal Rule of Evidence 102, which directs courts to construe the Rules of

Evidence "so as to administer every proceeding fairly . . . to the end of ascertaining the truth and securing a just determination. Fed. R. Evid. 102.

These rules require the Court to start with a presumption that artistic expression is not factual, for two reasons. Artists might base their work on real life, but they take creative liberties that blur the line between fact and fiction. Embellishment and fictional elements pervade, even when the artist draws on real world experience for inspiration. Thus, the introduction of artistic expression as a party admission will often not further the end of ascertaining the truth. In addition, if artists or budding artists know that their expression might put them in legal jeopardy, they might put down their pens, pocket their paintbrushes, or bite their tongues. As a society, we encourage that type of expression. A rule that discourages it would not be just, either to the parties or to the broader public. The Court recognizes that starting with a presumption that artistic expression is not a factual admission might in some cases lead to the exclusion of admissible evidence. But the First Amendment requires no less.

To overcome that rule, the proponent of evidence must offer some preliminary indicia that the artistic expression is a truthful narrative, like the inclusion of factual detail that is not publicly available. In an effort to meet that burden, Officers Cherry and Powell point to the "seemingly autobiographical details involving the arrest and prosecution at issue in this case." (ECF No. 52 at 3.) But their own words betray them: a "seemingly" autobiographical work is not necessarily autobiographical.

*First*, it is not enough just to show that an artist used the first person. Artists use the first-person as a tool of creative expression, sometimes to describe themselves, sometimes to describe a fictionalized version of themselves, and sometimes to describe a fictional character. Freddy Mercury did not confess to having "just killed a man" by putting "a gun against his head" and "pull[ing] the trigger."[1] Bob Marley did not confess to having shot a sheriff.[2] And Johnny Cash did not confess to shooting "a man in Reno just to watch him die."[3]

*Second*, it is not enough to show that an artist's expression bears some resemblance to real life events. Writers ripped Law & Order's scripts from the headlines, but they disclaimed, "The following story is fictional and does not depict any actual person or event."[4] *The People v. OJ Simpson* and *The Assassination of Gianni Versace*, two American Crime Stories, depicted real events, but were not necessarily factual retellings.

*Third*, it is not enough even to show that an artist wrote in the first person about events that resemble real life. Examples abound. In the television series *The Goldbergs*, Adam Goldberg chronicles his childhood exploits, with video excerpts at the end showing the real-life events that inspired the episode. Still, no one understands the show to be an accurate representation of events. The movie *Captain*

---

[1] Queen, *Bohemian Rhapsody, on* A Night at the Opera (EMI Records 1975)
[2] Bob Marley & The Wailers, *I Shot The Sheriff, on* Burnin' (Harry J. Studios 1973)
[3] Johnny Cash, *Folsom Prison Blues, on* Johnny Cash with His Hot and Blue Guitar (Sun 1955)
[4] Madeline Boardman, *12 Law & Order Episodes Ripped From the Headlines*, Entertainment Weekly, Nov. 6, 2015, https://ew.com/gallery/law-order-episodes-ripped-headlines/

5

*Phillips* depicts acts of heroism, but at least some reports suggest that it embellishes the events to favor Captain Phillips himself.[5] Likewise, *Eight Mile* appears to be an account of Eminem's youth in Detroit, but in fact it is a fictionalized account that bears parallels to his real experience.[6] And musically, when Calvin Broadus (aka Snoop Dogg) released "*Murder Was the Case*" after his prosecution for the murder of a rival gang member, he did not suggest that he was confessing to a version of events other than what he presented at trial.[7]

Officers Cherry and Powell argue that the Court should permit the jury to sort out whether Mr. Bey-Cousin's lyrics are factual or fictionalized. But doing so would not be a search for truth. It would instead be a trial about an artist's process, asking the jury to decide where the line is between inspiration and narration. Rule 102 does not contemplate such a trial issue. Nor does Federal Rule of Evidence 403, which permits a court to exclude otherwise relevant evidence if the danger of undue delay and a waste of time substantially outweighs the probative value. The collateral inquiry into Mr. Bey-Cousin's artistic process would substantially outweigh the probative value that his lyrics offer.

---

[5] *See* Jay Reeves, *Trial delayed in US suit over 2009 piracy case*, AP News, Dec. 2, 2013, https://apnews.com/article/b9f44015776648928c6d345682909295

[6] *See* Is 8 Mile Based on Eminem's Real Life? *https://thecinemaholic.com/is-8-mile-based-on-eminems-real-life/*

[7] See Snoop Dogg, Murder Was the Case, on Murder Was the Case (Death Row Records 1994).

### B.     Relevance Of The Lyrics To Damages

The jury does not need to hear Mr. Bey-Cousin's music, or review his lyrics, to consider his claim for damages. Tastes differ, and the Court will not ask the jury to determine whether Mr. Bey-Cousin's music is good or is likely to be a commercial success. The jury's damages analysis will rise and fall on the financial success that Mr. Bey-Cousin had experienced from his musical career or that he could reasonably hope to experience (without veering into speculation).

## IV.     CONCLUSION

As a society, we have decided to encourage free expression in all its forms. The Court will not adopt a rule that might undermine that goal. It therefore adopts a rule that presumes that artists tell stories, even when they draw inspiration from reality. Officers Cherry and Powell have not overcome that burden, so the Court will grant Mr. Bey-Cousin's Motion and preclude evidence of his lyrics. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

November 9, 2021